No. 23-1817

# United States Court of Appeals for the First Circuit

KARI MACRAE,
Plaintiff - Appellant,

v.

MATTHEW MATTOS; MATTHEW A. FERRON;
HANOVER PUBLIC SCHOOLS,
Defendants - Appellees.

On Appeal From A Judgment Of The United States District Court
For The District Of Massachusetts

## BRIEF OF DEFENDANTS - APPELLEES MATTHEW MATTOS; MATTHEW A. FERRON; HANOVER PUBLIC SCHOOLS

Leonard H. Kesten, Bar No. 36865
Gregor A. Pagnini, Bar No. 1139182
Deidre Brennan Regan, Bar No. 100234
BRODY, HARDOON, PERKINS & KESTEN LLP
265 Franklin Street
Boston, MA 02110
(617) 880-7100
lkesten@bhpklaw.com
gpagnini@bhpklaw.com
dregan@bhpklaw.com

Dated: February 8, 2024

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................... ii

JURISDICTIONAL STATEMENT ........................................................1

STATEMENT OF THE ISSUES............................................................1

STATEMENT OF THE CASE................................................................1

    A.    Procedural History................................................................1

    B.    Statement of Facts ...............................................................3

SUMMARY OF THE ARGUMENT ......................................................8

ARGUMENT .........................................................................................9

    I.    Standard of Review ..............................................................9

    II.    This Circuit's First Amendment Retaliation Standard Applies and Warrants Summary Judgment in Favor of the Defendants ..........10

    III.    The Defendants Undeniably Had a Legitimate Interest in Preventing Unnecessary Disruptions and Inefficiencies in Carrying out Their Public Service Mission Which Justified the Plaintiff's Termination ........................................................12

    IV.    Plaintiff's Argument That There Exists a Question for A Jury to Decide Is Simply Misplaced .............................................17

    V.    The District's Determination to Terminate the Plaintiff Was Reasonable.........................................................................17

CONCLUSION....................................................................................19

CERTIFICATE OF COMPLIANCE....................................................20

CERTIFICATE OF SERVICE ............................................................21

# TABLE OF AUTHORITIES

CASES:

*Bennett v. Metro. Nashville & Davidson Cnty.*,
   977 F.3d 530 *(*6th Cir. 2020).................................................................. 13

*Bonnell v. Lorenzo*,
   241 F.3d (6th Cir. 2001).................................................................. 13-14

*Clarendon Nat'l Ins. Co. v. Philadelphia Indem. Ins. Co.*,
   954 F.3d 397 (1st Cir. 2020) .............................................................. 9

*Cleavenger v. University of Oregon*,
   2015 U.S. Dist. LEXIS 102972 (D. Or. Aug. 6, 2015)................................ 10, 12

*Curran v. Cousins*,
   509 F.3d 36 (1st Cir. 2007) .......................................................... 13, 18

*Decotiis v. Whittemore*,
   635 F.2d 22 (1st Cir. 2011) ............................................................. 11

*Durstein v. Alexander*,
   629 F. Supp. 3d 402 (S.D. W.Va. 2022)............................................... 16

*Emp'r Ins. Co. of Wausau v. One Beacon Am. Ins. Co.*,
   744 F.3d 25 (1st Cir. 2014) ............................................................... 3

*Estock v.City of Westfield*,
   806 F. Supp. 2d 294 (D. Mass. 2011) ................................................. 14

*Garcetti v. Ceballos*,
   547 U.S. 410, 126 S.Ct. 1951 (2006)................................................... 14

*In re Carp.*,
   340 F.3d 15 (1st Cir. 2003) .............................................................. 15

*Martin v. Somerset Cnty.*,
   86 F.4th 938 (1st Cir. 2023) ............................................................. 17

*Moser v. Las Vegas Metropolitan Police Dept.*,
    984 F.3d 900 (9th Cir. 2021).................................................................................... 15

*Nichols v. Univ. of S. Miss.*,
    669 F. Supp. 2d 684 (S.D. Miss. 2009)........................................................ 14, 16

*Ocasio-Hernández v. Fortuño-Burset*,
    777 F.3d 1 (1st Cir. 2015) ........................................................................................ 9

*Pickering v. Board of Education*,
    391 U.S. 563 (1968) .................................................................................................. 2

*Riel v. City of Santa Monica*,
    No. CV 14-04692-BRO (JEMX), 2014 WL 12694159
    (C.D. Cal. Sept. 22, 2014)...................................................................................... 12

*Rockwood v. SKF USA Inc.*,
    687 F.3d 1 (1st Cir. 2012) ...................................................................................... 11

*Rosaura Bldg. Corp. v. Municipality of Mayaguez*,
    778 F.3d 55 (1st Cir. 2015) ...................................................................................... 3

*Nichols v. Univ. of S. Miss.*,
    669 F. Supp. 2d 664 (S.D. Miss. 2009)................................................................ 16

*Watson v. Ordonez*,
    No. 18-1688, 2020 WL 6788144 (1st Cir. May 1, 2020) .................................... 11

**STATUTES:**

42 U.S.C. § 1983 ........................................................................................................... 1

**RULES:**

Fed. R. App. P. 10....................................................................................................... 3
Fed. R. App. P. 28....................................................................................................... 3
Fed. R. App. P. 30....................................................................................................... 3

Fed. R. Civ. P. 56(a)................................................................................................. 10

**OTHER AUTHORITIES:**

5 *Am. Jur. 2d Appellate Review* § 605 ..................................................................... 13

# JURISDICTIONAL STATEMENT

The Defendants-Appellees, Matthew Mattos, Matthew A. Ferron, and Hanover Public Schools, take no issue with the Appellant's Jurisdictional Statement other than noting that, according to the docket, the Notice of Appeal was entered on October 2, 2023, not September 25, 2023. RA 6, 550.[1]

# STATEMENT OF THE ISSUES

Whether the District Court properly granted the Defendants' Motion for Summary Judgment?

# STATEMENT OF THE CASE

## A.    Procedural History

On November 29, 2021, the Plaintiff, Kari MacRae ("MacRae" or "Plaintiff"), filed a lawsuit against Defendants Matthew Mattos ("Mattos"), the Principal of Hanover High School, and Matthew A. Ferron ("Ferron"), Superintendent of Hanover High School, for firing her in violation of her First Amendment rights. RA 2. Defendants answered the complaint on December 22, 2021. RA 2. The Plaintiff thereafter amended her complaint to include the Hanover Public Schools as a Defendant (the "District" and, collectively as to all Defendants, "Defendants"), alleging again in a single count that, under 42 U.S.C. § 1983, the

---

[1] Defendants refer to the Record Appendix as "RA" followed by a page cite, and to Plaintiff's Addendum as "Plf. Add.", followed by a page cite.

Defendants retaliated against her for exercising her First Amendment rights. RA 2, 4, 7-13. The Defendants answered the amended complaint. RA 4, 14-18.

On February 17, 2023, the Defendants moved for summary judgment on the Plaintiff's claims on the grounds that: (i) the Plaintiff's claim failed under the *Pickering*[2] balancing test where certain media posts made by the Plaintiff contravened the principles of the Hanover Public School District and her duties as a teacher, thereby creating significant distraction from teaching and learning; and (ii) the individual Defendants are otherwise immune from suit based on qualified immunity. RA 5, 19-20. Plaintiff opposed. RA 5. The Defendants replied and also moved to strike MacRae's affidavit in support of her opposition to summary judgment. RA 6, Plf. Add. 1.

On September 25, 2023, the Court (Casper, J.) allowed Defendants' motion for summary judgment and allowed in part and denied in part Defendants' motion to strike portions of Plaintiff's affidavit. RA 6; Plf. Add. 1-28. The Court entered Judgment in favor of the Defendants that same day. RA 6, 549. On October 2, 2023, Plaintiff filed a notice of appeal. RA 6, 550.

---

[2] *Pickering v. Board of Education*, 391 U.S. 563 (1968).

**B.    Statement of Facts[3]**

Plaintiff MacRae is a Bourne resident who began working as a school

teacher in 2015. RA 22, 109, 112-113. In August 2021, she interviewed with the

Hanover School's District's Curriculum Director, Matthew Plummer, for a position

teaching high school level math and business courses. RA 23, 314. Plummer

interviewed MacRae. At that time, Plaintiff was an elected member of the Bourne

---

[3] The Plaintiff's appellate brief does not comply with Federal Rules of
Appellate Procedure 28 and 30 in that, for example, it does not include a statement
of facts relevant to the issues submitted for review with supporting citations to the
record. It primarily refers only to a procedural history. The majority of references
to any purported "facts" essentially are by citation to the District Court's
Memorandum and Order. *See generally Fed. R. App. P. 28(a)(6)* (appellate rules
require "a concise statement of the case setting out the facts relevant to the issues
submitted for review ... with appropriate references to the record"). At one point,
the Plaintiff states that no student, no teacher, and no administrator had raised any
concerns about the Plaintiff and/or her social media posts, citing her Statement of
Additional Material Facts. Plaintiff' brief, p. 3. The Defendants, however, disputed
this assertion, RA 518-519, and the District Court did not rely on the Plaintiff's
assertion.

Moreover, footnote 1 of the Plaintiff's brief contains a conclusory assertion
that is not supported by any citation at all. And, it does not appear from the record
that the Plaintiff made this assertion in any pleading or document below. It is too
late to make such assertion now. *See Emp'r Ins. Co. of Wausau v. One Beacon Am.
Ins. Co.,* 744 F.3d 25, 29 (1st Cir. 2014) ("it is a virtually ironclad rule that a party
may not advance for the first time on appeal either a new argument or an old
argument that depends on a new factual predicate."). Appellate review
concentrates on considering the factual record presented in the trial courts. *See
Fed. R. App. P. 10(a)* (defining the record on appeal as comprising the evidence
introduced in the trial court); *see also Rosaura Bldg. Corp. v. Municipality of
Mayaguez,* 778 F.3d 55, 64 (1st Cir. 2015).

School Committee as of May 2021, of which Plummer was unaware. RA 23, 115-118, 170.

By letter dated August 25, 2021, the District hired the Plaintiff to teach math and business classes starting as of September 1, 2021. RA 23, 182. On the same day the Hanover letter went out, the Bourne School Committee and the Superintendent and Assistant Superintendent of the Bourne Public Schools received a complaint from a community member regarding the Plaintiff's social media posts. RA 23, 183.

On the evening of September 1, 2021, the same day the Plaintiff began her employment in Hanover, the Bourne School Committee held an executive session to discuss the Plaintiff's social media posts. RA 24, 127, 191. During this session, the Committee determined that some of the Plaintiff's posts violated the core values of the Bourne Public School. *Id*. The Committee planned to have a public resolution at its next meeting to further address the matter. RA 24, 183-184.

The Plaintiff did not inform the Hanover Public School District about the posts or Bourne School Committee's resolution against her as a result of the September 1, 2021 meeting. RA 24, 127.

On September 15, 2021, the Bourne School Committee and Chairperson learned that the Plaintiff's social media posts, which included those aimed at LGBTQ+ population had circulated, and, as a result, "… staff and students were

very upset." RA 24, 184. The Plaintiff agreed that her posts made staff and students upset. RA 24, 141. The Bourne Educators Association subsequently voted 100% in favor of making a public statement against the posts made by the Plaintiff. RA 24-25, 141.

On Friday, September 17, 2021, the *Cape Cod Times* published an article regarding the Plaintiff's activity on TikTok and her position on the Bourne School Committee. RA 25, 131, 198.[4] The social media posts in question involved six "memes" that the Plaintiff liked, shared, posted or reposted as well as a video that the Plaintiff posted to her TikToK account. *Id*. The Plaintiff had added hashtags to the memes in order to increase their visibility on social media. RA 25, 129, 199. As the time of these posts, the Plaintiff operated her TikTok account under the name "NanaMacof4". RA 25, 199. She used this account to interact with others, including students. RA 25, 119-120. At her deposition, the Plaintiff testified that TikTok deleted her "NanaMacof4" account for "community standards violations." RA 25, 120.

---

[4] Plaintiff's appendix at RA 198 contains a copy of the *Cape Cod Times* article but the version is unreadable and is not a duplicate of the article attached as Exhibit 8 to the Defendants' motion for summary judgment materials. The Defendants thus have filed herewith a motion for leave to file a supplemental appendix to include the correct version of the article among other items. The Defendants will refer to this supplemental appendix as "Supp. App." followed by a page cite.

By the morning of Monday, September 20, 2021, Defendant Ferron, the District's Superintendent, became aware of the *Cape Cod Times* article. RA 26, 200-202. Later that morning, Hanover High School principal, Defendant Mattos, met with the Plaintiff, notified her that the District was aware of her social media posts, and placed her on paid administrative leave while the District conducted an investigation. RA 26, 69-70, 137, 203. During the investigation, the District became aware of the six memes associated with the Plaintiff's TikTok account. RA 26, 42, 76-77, 199. Defendants Mattos, Ferron, and Plummer were concerned that the nature of the posts could be offensive or hurtful to staff and students at the school, including students in the Plaintiff's class. RA 27, 39-40, 69.

Also on September 22, 2021, the Bourne School Committee held a public meeting at which the Chair discussed the Plaintiff's social media activity, including emails that it had received from concerned citizens. RA 27, 183-184. During the time for public comment, over ten people spoke about concerns regarding the Plaintiff's posts, including public discussion that "the posts did not create a safe, inclusive or welcoming learning environment." RA 27, 184-188. Several speakers described the harmful impact of the Plaintiff's social media activity on transgender and other LGBTQ children and referenced the elevated risk of suicide for transgender and African American youth. RA 27, 184-185, 524.

On September 24, 2021, Principal Mattos held a meeting to interview the Plaintiff as part of his investigation. RA 28, 145. In addition to Mattos and the Plaintiff, Ann Galotti (the Math Department Head), and Andrew McLean, the Plaintiff's union representative, attended the meeting. RA 29, 253-254. To open the meeting, Mattos provided the Plaintiff with a copy of the District's mission statement which included "[e]nsuring a safe learning environment based on respectful relationships." RA 149, 524. The mission statement also listed "Collaborative relationships" and "Respect for human differences" as "Core Values." RA 29, 256.

Mattos testified that he believed that some of the memes posted by the Plaintiff were disparaging towards transgender persons and that the high school was supposed to be an accepting community where students could come and learn. RA 30, 78. He was aware that the Plaintiff had transgender children in her classroom. RA 30, 69, 82. The Plaintiff agreed at her deposition that some of the memes were derogatory towards transgender persons. RA 30, 129, 136-147. She also acknowledged that her posts would place students and staff in a position where they would not feel safe, welcomed, or appreciated. RA 31, 132. Moreover, when asked whether one of the memes she posted was derogatory towards immigrants, the Plaintiff acknowledged that she holds animus towards illegal immigrants. RA 32, 137.

McLean thought the Plaintiff's posts, given their dismissiveness towards students struggling with gender identity, "…would be a huge distraction from teaching and learning for those students …." RA 30, 208.[5] The posts "… hit the trifecta of transphobic, homophobic and racist." RA 30, 217. Or, as Plummer reacted, the memes were "one big ball of hate." RA 30, 173. And, as McLean noted, the posts showed a complete lack of empathy to a vulnerable subgroup of the school's population, which evidenced that it would be an incredible distraction from teaching and learning. RA 31, 33-34, 44-45, 209.

On September 29, 2021, the District issued a letter to the Plaintiff, terminating her employment. RA 32, 253-254.[6] The letter explained that "continuing your employment in light of your social media posts would have a significant negative impact on student learning at HHS." *Id*.

## SUMMARY OF THE ARGUMENT

The Plaintiff belatedly attempts, without sufficient support, to argue that this Court should adopt a different standard of review for a First Amendment retaliation claim, albeit without any sufficient citation to any supportive case law.

---

[5] Teachers in the Hanover Public Schools testified that the Plaintiff's social media posts did in fact cause a disruption in the learning within the District. RA 32, 247-248.

[6] Both the Plaintiff and McLean testified that the process conducted by Mattos leading to the Plaintiff's termination was fair and thorough. RA 34, 152, 214.

Notably, while it formed the basis of her opposition to summary judgment, the Plaintiff no longer argues that there exists any disputed issues of fact. This is critical and indicative of her claim below that disputed facts somehow precluded entry of summary judgment. This clearly was not an issue and the fact the Plaintiff does not press this issue on appeal confirms this point.

Beyond that, however, despite the Plaintiff's desperate attempt to argue to the contrary - including her reliance on a seven year old unreported Fifth Circuit decision - the fact remains that this Court has a well-settled law governing whether an adverse employment action against a public employee violates any First Amendment free speech rights. Plaintiff's attempt to argue to the contrary fails.

The same holds true with respect to the Plaintiff's argument that the Defendants did not have a legitimate interest in preventing unnecessary disruptions to carrying out their public service mission that clearly justified the Plaintiff's termination as a teacher in the public school system.

## ARGUMENT

### I. Standard of Review

This Court reviews a District Court's grant of summary judgment *de novo*. *Clarendon Nat'l Ins. Co. v. Philadelphia Indem. Ins. Co.,* 954 F.3d 397, 403–04 (1st Cir. 2020), citing *Ocasio-Hernández v. Fortuño-Burset*, 777 F.3d 1, 4 (1st Cir. 2015). In reviewing a grant of summary judgment, the appellate court is limited to

the evidence that was before the trial court and applies the same standard of review as did the trial court. *See* 5 *Am. Jur. 2d Appellate Review* § 605. A court grants summary judgment where there is no genuine dispute as to any material fact and the undisputed facts demonstrate that the moving party is entitled to judgment as a matter of law. *Fed. R. Civ. P. 56(a).*

## II. This Circuit's First Amendment Retaliation Standard Applies and Warrants Summary Judgment in Favor of the Defendants

The Plaintiff's opposition to Defendants' motion for summary largely rested on her contention that there existed factual disputes. Def. Supp. App., pp. 6-16. She does not pursue that claim on appeal and rightfully so given, *inter alia*, (i) her deposition testimony wherein she stated that she understood how individuals and students could be offended by her posts and (ii) her responses to Defendants' Statement of Facts in support of summary judgment that were replete with instances where she claimed a disputed fact but failed to cite to any record evidence supporting that assertion.

Instead, the Plaintiff claims that the "law does not support the Defendants' motion." Plaintiff's brief, p. 16. More particularly, largely on the basis of a seven year old unreported Fifth Circuit decision,[7] the Plaintiff undertakes to fashion an argument regarding "preemployment speech," all while noting that neither this

---

[7] *Cleavenger v. University of Oregon*, 2015 U.S. Dist. LEXIS 102972, ** 26-27 (D. Or. Aug. 6, 2015).

Court or any other Circuit Court has ever addressed such an issue in terms of a First Amendment retaliation claim. Plaintiff's brief, p. 7. This simply highlights the fallacy of the Plaintiff's argument. Indeed, in straining to frame this argument, the Plaintiff raises a wholly new assertion on appeal – that social media use "is now ubiquitous and, for many users, begins as early as 12 years of age" and that a "more stringent standard" is required. This Court, however, does not consider arguments that were not developed or properly presented below. *See Rockwood v. SKF USA Inc.*, 687 F.3d 1, 9 (1st Cir. 2012) (arguments cannot be made for the first time on appeal); *Watson v. Ordonez*, No. 18-1688, 2020 WL 6788144, at *1 (1st Cir. May 1, 2020).

Regardless, as the District Court noted in this case, this Court already has set forth an inquiry which governs "whether an adverse employment action against a public employee violates her First Amendment free speech rights." RA 527, citing *Decotiis v. Whittemore*, 635 F.2d 22, 29 (1st Cir. 2011). The Plaintiff contends that this Court's framework should not apply where the government retaliates against an employee for "pre-employment speech" and that only a more "general standard" should apply wherein a plaintiff only had to show that their conduct was constitutionally protected and prove a causal connection between the allegedly protected conduct and the response. Plaintiff's brief, p. 8; Def. Supp. App., p. 18.

However, as the District Court properly remarked, the Plaintiff's proposed standard lacks any consideration of the government's interest. RA 528.

Further, the single case cited by the Plaintiff in her opposition, *Cleavenger*, did not support her position. *Id*. As the District Court stated, in *Cleavenger*, the government argued that retaliation against pre-employment speech was impossible because an employer could not intend to chill speech which had already ended and *Cleavenger* in no way suggested that the test for public employees' First Amendment rights should be set aside for a different standard. The District Court cited to *Riel v. City of Santa Monica,* No. CV 14-04692-BRO (JEMX), 2014 WL 12694159, at * 1-2, 6-7 (C.D. Cal. Sept. 22, 2014), as a case balancing the plaintiff's interest in pre-employment speech critical of city government as against city's interests as her employer). RA 529. Accordingly, as the District Court correctly ruled, "the well-settled First Circuit three-part framework for evaluating public employees' First Amendment retaliation claims governs here." RA 529. Nothing in the Plaintiff's brief alters this ruling and result.

## III. The Defendants Undeniably Had a Legitimate Interest in Preventing Unnecessary Disruptions and Inefficiencies in Carrying out Their Public Service Mission Which Justified the Plaintiff's Termination

Given the evidence, including her own deposition testimony, it is incredible that the Plaintiff argues that the Defendants lacked a legitimate interest that justified her termination because her posts allegedly "did not cause" a disruption to

learning and a "mere prediction of disruption" is insufficient. The Plaintiff's argument totally ignores the case law in this Circuit.

As the District Court stated, "Defendants' asserted interest in preventing a disruption is a legitimate government interest." RA 530. The Court cited *Curran v. Cousins*, 509 F.3d 36, 48 (1st Cir. 2007), as explaining that an employer need not show "'actual adverse effect in order to terminate an employee under the *Garcetti/Pickering*[8] test' and that '[s]ignificant weight is given to the public employer's "reasonable predictions of disruption, even when the speech involved is on a matter of public concern"'". *Id*. The Court also cited *Bennett v. Metro. Nashville & Davidson Cnty.,* 977 F.3d 530, 541 *(*6th Cir. 2020), as holding that termination based on employee's social media post commenting on the outcome of a presidential election was justified given the use of a racial slur in the post, detrimental to the impact of on working relationships and detraction from public agency's mission to provide unbiased service. RA 530. Based on the same, the District Court properly ruled that "given the District's stated mission to '[e]nsure a safe learning environment based on respectful relationships' and to maintain '[r]espect for human differences," RA 256, 530, "it would have a strong interest in preventing employee speech that reflects intolerance of groups of people represented in its student body or staff." RA 530, citing (i) *Bonnell v. Lorenzo*, 241

---

[8] *Garcetti v. Ceballos*, 547 U.S. 410, 126 S.Ct. 1951 (2006).

F.3d 800, 824 (6th Cir. 2001), as recognizing that a "learning institution has strong

interest in preventing" speech "that rises to a level of harassment – whether based

on sex, race, ethnicity, or other invidious premise – and which creates a hostile

learning environment"; (ii) *Estock v.City of Westfield*, 806 F. Supp. 2d 294, 308

(D. Mass. 2011), as recognizing that public schools have a "strong interest in

preserving a collegial atmosphere, harmonious relations among teachers, and

respect for the curriculum;" and (iii) *Nichols v. Univ. of S. Miss.*, 669 F. Supp. 2d

684, 699 (S.D. Miss. 2009), as ruling that the termination of a professor was

justified where the professor's comments regarding sexual orientation and morality

violated the university's "sexual orientation harassment/discrimination policy,"

harmed the professor's relationship with a gay student, and may have harmed the

professor's relationship with other students and faculty. RA 531.

Oddly, despite the District Court's reference to multiple cases, the Plaintiff

focuses only on the *Curran* case, arguing that the Plaintiff's speech "cannot be

compared to the employee's speech in *Curran*." This argument is simply beyond

the relevant point. Indeed, even in the Plaintiff's own recitation, the *Curran* court

concluded that the employee's comments went "far beyond providing information

in which there was a legitimate public interest." Plaintiff's brief, p. 11. Is the

Plaintiff actually suggesting that her repugnant and offensive posts did not go far

beyond providing such information as to which there was a legitimate public

interests? This would be ludicrous at its basis and highlights her lack of understanding that her posts posed to the detriment to the public, her colleagues, administrators, and her students. Further, she has the nerve to argue that her offensive posts did not concern the school district in any way. Plaintiff's brief, p. 12. Such an assertion simply strains credulity.

Moreover, in attempting to stave off judgment for the Defendants on her claim, she now asserts – again for the first time on appeal -- that a 2021 Ninth Circuit case, *Moser v. Las Vegas Metropolitan Police Dept.*, 984 F.3d 900 (9th Cir. 2021), has some relevance in this case. This argument fails for multiple reasons. First, the Plaintiff did not present her purported argument that the approach of a Ninth Circuit's is "correct" to the District Court, and she cannot raise such an argument on the first time on appeal. S*ee generally In re Carp.*, 340 F.3d 15, 26 (1st Cir. 2003) ("That a party may not advance an argument for the first time on appeal is a virtually ironclad rule in this circuit...").

In any event, her argument that there needed to be an "actual disruption" to the Hanover Schools prior to her termination is unsupported and is contrary to the law and the facts. As the District Court correctly noted:

> MacRae acknowledged in her … interview that "she could understand why Mattos thought that the situation in Bourne may impact the learning environment in Hanover. As a teacher, MacRae's role required her to interact with members of the public, including students and parents on a regular basis."

RA 540, citing *Durstein v. Alexander*, 629 F. Supp. 3d 402, 426 (S.D. W.Va. 2022), for the assertion that "the more the employee's job requires … public contact, the greater the state's interest in firing her for expression that offends her employer" and concluding that the teacher had "direct contact with members of the public every day." It is undisputed that students in the Plaintiff's classroom and within the District embodied characteristics that the Plaintiff's posts appeared to denigrate. *See, e.g.,* RA 125-126, 540. Notably, the District Court again cited *Durstein* for the proposition that "[i]t was reasonable for the Board, reading the tweets that disparaged Muslim, Jewish, and Black students and knowing that the student body contained students of this very race and these very religions, to infer that the disparaging comments would cause a serious internal disruption in the school"). RA 540.

Moreover, as the District Court correctly noted, "at least some of MacRae's speech was at odds with the District's stated mission of providing a "safe learning environment based on respectful relationships" and promoting "[r]espect for human differences." RA 256, 540-541.[9]

---

[9] The District Court cited *Nichols v. Univ. of S. Miss.*, 669 F. Supp. 2d 664, 699 (S.D. Miss. 2009) as holding that a professor's termination did not violate the First Amendment where his statements violated the university's policy to "foster an environment of respect for the dignit and worth of all members of the university community").

## IV.    Plaintiff's Argument That There Exists a Question for A Jury to Decide Is Simply Misplaced

The Plaintiff asserts that there exists a jury question as to whether her social media posts would cause a disruption - an argument which is simply beyond belief. She claims there are remaining factual disputes on this issue and argues that the District Court's ruling that the Defendants' conclusion as to her termination was "unreasonable." Plaintiff's brief, p. 14. She laments that the District Court failed to cite a First Circuit case addressing this issue. *Id.* But, is it not the Plaintiff's duty to provide a court with citations supporting their assertions? This failing in and of itself warrants dismissal of the Plaintiff's claims on appeal in this issue.

In any event, the Plaintiff's claim that her request of a jury trial somehow eclipsed the District Court's ruling it without merit. Plaintiff's brief, p. 15. Indeed, she never posited any such claim below and cannot do so for the first time here. An argument not advanced in the district court cannot be broached for the first time in the Court of Appeals. See *Martin v. Somerset Cnty.,* 86 F.4th 938, 946 (1st Cir. 2023). That she simply requested a jury trial does not alter the fact that she simply was not entitled to one.

## V.    The District's Determination to Terminate the Plaintiff Was Reasonable

The Plaintiff's arguments regarding her termination totally disregards the evidence that much of her posts were at odds with the District's stated mission of providing a "safe learning environment based on respectful relationships" and

"promoting '[r]espect for human differences,'" RA 540, and the fact that Defendants "need not 'allow events to unfold to the extent that the disruption of the office and the destruction of working relationships is manifest before taking action.'" *Curran*, 509 F.3d at 49. As the District Court correctly remarked, the Defendants "adduced ample evidence to show that the Plaintiff's posts had the potential to disrupt the District's learning environment." RA 539. Indeed, the Plaintiff herself stated in an interview that "she could understand why Mattos thought that the situation in Bourne may impact the learning environment in Hanover." RA 540, and cases cited.

Yet, the Plaintiff now contends that the decision to terminate her employment in Hanover "was made on subjective, individual belief." Plaintiff's brief, p. 16. This assertion in incredulous, including her claim that she never acknowledged that her social media posts "were widespread" and/or that they would not "have caused a negative impact in the learning environment." Plaintiff's brief, p. 16. At the same time and in her same brief, however, she argues that social media is "ubiquitous" such that a different standard of review should apply. *Id.*, p. 8. She cannot have it both ways.

Certainly, as the District Court properly acknowledged, and as noted *supra*, the fact remains that the Plaintiff was a teacher in a position that required her to interact with members of the public, including students and parents on a regular

basis and that her posts were undeniably at odds with the District's stated mission. RA 540, and cases cited. Undeniably, given the media coverage and controversy surrounding the Plaintiff's posts, the Defendants had a basis for being concerned about the risk to the District's operations given the Plaintiff's memes and the publicity surrounding them. RA 541. The Plaintiff's arguments that the District Court in any way "ignored" evidence she purportedly presented to it simply fails.

## CONCLUSION

In light of the foregoing, the Defendants-Appellees respectfully request that this Honorable Court **affirm** the judgment in their favor.

Respectfully submitted,
The Defendants-Appellees,
By their attorneys,

*/s/ Leonard H. Kesten*
Leonard H. Kesten, Bar No. 36835
Gregor A. Pagnini, Bar No. 1139182
Deidre Brennan Regan, Bar No. 100234
BRODY, HARDOON, PERKINS & KESTEN LLP
265 Franklin Street
Boston, MA 02110
(617) 880-7100
lkesten@bhpklaw.com
gpagnini@bhpklaw.com
dregan@bhpklaw.com

Date: February 8, 2024

**CERTIFICATE OF COMPLIANCE**
**WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS,**
**AND TYPE STYLE REQUIREMENTS**

1.    This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 4,472 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B).

2.    This brief complies with the typeface requirement of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word 2013 in 14-point Times New Roman type.

/s/ *Leonard H. Kesten*
Leonard H. Kesten, Bar No. 36835
Gregor A. Pagnini, Bar No. 1139182
Deidre Brennan Regan, Bar No. 100234
BRODY, HARDOON, PERKINS & KESTEN LLP
265 Franklin Street
Boston, MA 02110
(617) 880-7100
lkesten@bhpklaw.com
gpagnini@bhpklaw.com
dregan@bhpklaw.com

Date: February 8, 2024

## CERTIFICATE OF SERVICE

I hereby certify that on February 8, 2024 I electronically filed the foregoing document with the United States Court of Appeals for the First Circuit by using the CM/ECF system. I certify that the following parties or their counsel of record are registered as ECF Filers and that they will be served by the CM/ECF system:

Michael Bekesha
Direct: 202-646-5172
Fax: 202-646-5199
Judicial Watch Inc
425 3rd St. SW, Ste. 800
Washington, DC 20024

*s/ Leonard H. Kesten*

Leonard H. Kesten, Bar No. 36835
Gregor A. Pagnini, Bar No. 1139182
Deidre Brennan Regan, Bar No. 100234
BRODY, HARDOON, PERKINS & KESTEN LLP
265 Franklin Street
Boston, MA 02110
(617) 880-7100
lkesten@bhpklaw.com
gpagnini@bhpklaw.com
dregan@bhpklaw.com